IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE JAMES CLARK, SR., | No. 2:21-CV-1975-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| CLEVELAND, et al., | |
| Defendants. | |

    Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court is Plaintiff's original complaint, ECF No. 1.

    The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if it:  (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I.  PLAINTIFF'S ALLEGATIONS

Plaintiff names Sacramento County Jail employees Deputy Cleveland, Sgt. Jamil, Sgt. Haynes, and Lt. Baker as defendants.  ECF No. 1, pg. 2.  Plaintiff alleges the following:

> Cleveland denied me to take with me a bible even though previous times I had done so.  He further assaulted me by sweeping my legs from under me.
>
> Cleveland filed his report only after I wrote my complaint and Jamil and Sgt. Hanyes and Lt. Baker [] all are copable (sic)and share the same guilt.
>
> My ligament suffered even further damage be it they did not provide me shoe for 33 days after be assulted.
>
> I have made it quite clear that I require protected from all sheriffs deputies.
>
> On 8-21 I suffered even further injuries when my leg restraints caught in the gear shift and took me to the ground and damaged and scared my [] ancles.
>
> I now must walk with a cain do to not be given shoe[.]

Id. at 3-5 (errors in original).

## II.  DISCUSSION

Plaintiff's complaint is insufficient.  Specifically, Plaintiff fails to allege enough facts to determine whether he states a cognizable claim under the First Amendment for Defendant Cleveland denying Plaintiff a Bible.  Additionally, Plaintiff fails to allege sufficient facts to determine whether Plaintiff has a cognizable excessive force claim.  Further, Plaintiff fails to allege an actual connection or link between a constitutional violation and the actions of Defendants Jamil, Haynes, and Baker.  Plaintiff will be granted an opportunity to amend.

2

**A.  Religious Practice**

The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion.  See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); see also Pell v. Procunier, 417 U.S. 817, 822 (1974).  Thus, for example, prisoners have a right to be provided with food sufficient to sustain them in good health and which satisfies the dietary laws of their religion.  See McElyea v. Babbit, 833 F.2d 196, 198 (9th Cir. 1987).  In addition, prison officials are required to provide prisoners facilities where they can worship and access to clergy or spiritual leaders.  See Glittlemacker v. Prasse, 428 F.2d 1, 4 (3rd Cir. 1970).  Officials are not, however, required to supply clergy at state expense.  See id.  Inmates also must be given a "reasonable opportunity" to pursue their faith comparable to that afforded fellow prisoners who adhere to conventional religious precepts.  See Cruz v. Beto, 405 U.S. 319, 322 (1972).

However, the court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and valid penological objectives.  See McElyea, 833 F.2d at 197.  For instance, under the First Amendment, the penological interest in a simplified food service has been held sufficient to allow a prison to provide orthodox Jewish inmates with a pork-free diet instead of a completely kosher diet.  See Ward v. Walsh, 1 F.3d 873, 877-79 (9th Cir. 1993).  Similarly, prison officials have a legitimate penological interest in getting inmates to their work and educational assignments.  See Mayweathers v. Newland, 258 F.3d 930, 38 (9th Cir. 2001) (analyzing Muslim inmates' First Amendment challenge to prison work rule).

While free exercise of religion claims originally arose under the First Amendment, Congress has enacted various statutes in an effort to provide prisoners with heightened religious protection.  See Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005).  Prior to these congressional efforts, prison free exercise claims were analyzed under the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987); see e.g. O'Lone, 382 U.S. at 349.  The first effort to provide heightened protection was the Religious Freedom Restoration Act (RFRA) of 1993.  However, the Supreme Court invalidated that act and restored the "reasonableness test."  See City of Boerne v. P.F. Flores, 521 U.S. 507 (1997); see also Freeman v. Arpaio, 125 F.3d

732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's decision in <u>City of Boerne</u> invalidated RFRA and restored the "reasonableness test" as the applicable standard in free exercise challenges brought by prison inmates).

Congress then enacted the Religious Land Use and Institutionalized Persons Act (RLUIPA) in 2000 ". . . in response to the constitutional flaws with RFRA identified in <u>City of Boerne</u>." <u>Guru Nanak Sikh Soc. of Yuba City v. County of Sutter</u>, 456 F.3d 978, 985 (9th Cir. 2006). Under RLUIPA, prison officials are prohibited from imposing "substantial burdens" on religious exercise unless there exists a compelling governmental interest and the burden is the least restrictive means of satisfying that interest. <u>See id.</u> at 986. RLUIPA has been upheld by the Supreme Court, which held that RLUIPA's "institutionalized-persons provision was compatible with the Court's Establishment Clause jurisprudence and concluded that RLUIPA 'alleviates exceptional government-created burdens on private religious exercise.'" <u>Warsoldier</u>, 418 F.3d at 994 (quoting <u>Cutter v. Wilkinson</u>, 125 S.Ct. 2113, 2117 (2005)). Congress achieved this goal by replacing the "reasonableness test" articulated in <u>Turner</u> with the "compelling government interest" test codified in RLUIPA at 42 U.S.C. § 2000cc-1(a). <u>See id.</u>

It is not clear whether a prisoner must specifically raise RLUIPA in order to have his claim analyzed under the statute's heightened standard. In <u>Alvarez v. Hill</u>, the Ninth Circuit held that, if a complaint contains "factual allegations establishing a 'plausible' entitlement to relief under RLUIPA, [plaintiff has] satisfied the minimal notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure." 518 F.3d 1152, 1157 (9th Cir. 2008); <u>but see</u> <u>Henderson v. Terhune</u>, 379 F.3d 709, 715 n.1 (9th Cir. 2004) (declining to express any opinion about whether plaintiff could prevail under RLUIPA because plaintiff brought his claim under the First Amendment only). Therefore, it is possible for a prisoner's complaint to raise both a First Amendment claim and RLUIPA claim based on the same factual allegations. In other words, even if the plaintiff does not specifically invoke the heightened protections of RLUIPA, he may nonetheless be entitled to them. Under <u>Henderson</u>, however, the plaintiff's claim may be limited to the less stringent <u>Turner</u> "reasonableness test" if the plaintiff specifically brings the claim under the First Amendment only.

Under both the First Amendment and RLUIPA, the prisoner bears the initial burden of establishing that the defendants substantially burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith.  See Freeman v. Arpaio,125 F.3d 732, 736 (9th Cir. 1997) (analyzing claim under First Amendment); see also Warsoldier, 418 F.3d at 994-95 (analyzing claim under RLUIPA).  While RLUIPA does not define what constitutes a "substantial burden," pre-RLUIPA cases are instructive.  See id. at 995 (discussing cases defining "substantial burden" in the First Amendment context).  To show a substantial burden on the practice of religion, the prisoner must demonstrate that prison officials' conduct ". . . burdens the adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates."  Graham v. Commissioner, 822 F.2d 844, 850-51 (9th Cir. 1987).  The burden must be more than a mere inconvenience.  See id. at 851.  In the context of claims based on religious diets, a plaintiff must prove that prison officials refused to provide a diet which satisfies his religious dietary laws or that the available prison menu prevented him from adhering to the religious dietary laws mandated by his faith.  See Bryant v. Gomez, 46 F.3d 948, 949 (9th Cir. 1995).

Under the First Amendment "reasonableness test," where the inmate shows a substantial burden the prison regulation or restriction at issue is nonetheless valid if it is reasonably related to a legitimate penological interest.  See Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (citing Turner, 482 U.S. at 89).  In applying this test, the court must weight four factors:  (1) whether there is a rational connection between the regulation or restriction and the government interest put forward to justify it; (2) whether there are available alternative means of exercising the right; (3) whether accommodation of the asserted religious right will have a detrimental impact on prison guards, other inmates, or the allocation of limited prison resources; and (4) whether there exist ready alternatives to the regulation or restriction.  See id.; see also Allen v. Toombs, 827 F.2d 563, 567 (9th Cir. 1987).

Under RLUIPA, the government is required to ". . . meet the much stricter burden of showing that the burden it imposes on religious exercise is 'in furtherance of a compelling

government interest; and is the least restrictive means of furthering that compelling governmental interest.'" Green v. Solano County Jail, 513 F.3d 992, 986, 989 (9th Cir. 2008) (citing 42 U.S.C. § 2000cc-1(a)(1)-(2) and 2(b)); see also Warsoldier, 418 F.3d at 994-95. Prison security is an example of a compelling governmental interest. See Green, 513 F.3d at 989 (citing Cutter, 125 S.Ct. at 2113 n.13). In establishing that the regulation or restriction is the least restrictive means to achieve a compelling governmental interest, prison officials must show that they actually considered and rejected the efficacy of less restrictive means before adopting the challenged practice. See Green, 513 F.3d at 989 (citing Warsoldier, 418 F.3d at 999).

Here, Plaintiff states that Defendant Cleveland deprived him of taking a Bible somewhere. Plaintiff does not provide anything more surrounding this claim. Upon amending, Plaintiff should consider, among other q questions similar to the following: how did the deprivation of the Bible burden Plaintiff's practice of religion, where was Plaintiff going, does Plaintiff's religion require him to have a Bible with him wherever he was going, why did Defendant Cleveland deprive Plaintiff of the Bible, etc.

### B. Excessive Force

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison

official must have a "sufficiently culpable mind."  See id.

When prison officials stand accused of using excessive force, the core judicial inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees.  See Whitley, 475 U.S. at 320-21.  In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response.  See Hudson, 503 U.S. at 7.  The absence of an emergency situation is probative of whether force was applied maliciously or sadistically.  See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc).  The lack of injuries is also probative.  See Hudson, 503 U.S. at 7-9.  Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials.  See Whitley, 475 U.S. at 321-22.

Here, Plaintiff asserts that Defendant Cleveland assaulted Plaintiff by sweeping Plaintiff's legs out from under him.  Upon amending, Plaintiff should provide the context of the assault.  A critical element of an excessive force claim is the defendant's intent.  Plaintiff should provide facts showing Defendant Cleveland's intent.  Plaintiff should consider questions like what led to the assault, were there any words exchanged, what was Plaintiff doing, what was Defendant Cleveland doing, when did the assault occur, etc.

/ / /

/ / /

/ / /

/ / /

### C. Causal Link

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Here, Plaintiff tries to raise a claim against Defendants Jamil, Haynes, and Baker by saying they share the same guilt with Defendant Cleveland. Plaintiff does not provide any facts as to what Jamil, Haynes, and Baker did to Plaintiff. Upon amending, Plaintiff should keep in mind the following: as to each Defendant, Plaintiff must allege which Defendant took what action that caused which specific constitutional violation.

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make

Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, Plaintiff is warned that failure to file a first amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's original complaint is dismissed with leave to amend; and
2. Plaintiff shall file a first amended complaint within 30 days of the date of service of this order.

Dated: January 12, 2022

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE