1

2

3

4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    ANDRE JAMES CLARK, SR.,                    No.  2:21-CV-1975-TLN-DMC-P

12              Plaintiff,

13         v.                                     FINDINGS AND RECOMMENDATIONS

14    CLEVELAND, et al.,

15              Defendants.

16

17              Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18    42 U.S.C. § 1983.  Pending before the Court is Plaintiff's first amended complaint, ECF No. 12.

19              The Court is required to screen complaints brought by prisoners seeking relief

20    against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C.

21    § 1915A(a).  The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or

22    malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief

23    from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover,

24    the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain

25    statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This

26    means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne, 84 F.3d

27    1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the

28    complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

1    rests.  See <u>Kimes v. Stone</u>, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because Plaintiff must allege

2    with at least some degree of particularity overt acts by specific defendants which support the

3    claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is

4    impossible for the Court to conduct the screening required by law when the allegations are vague

5    and conclusory.

6

7                                    **I.  PLAINTIFF'S ALLEGATIONS**

8              Plaintiff names the following as defendants: (1) Deputy Cleveland; (2) Sgt. Jamil;

9    (3) Sgt. Haynes; and (4) and Lt. Baker as defendants. <u>See</u> ECF No. 12, pgs. 1-2. Plaintiff alleges the

10   following:

11            He [Cleveland] violated my persons by sweeping my feet from
              under me while I was cuffed and shackled. This occurred when I
12            mentioned reporting [Cleveland's] violent actions against me to
              Jeremy Dick. He [Cleveland] further went on twisting and bending
13            my fingers on both hand-cuffed behind me in Sutter Hospital
              hallways. I suffered a hairline fracture in my [left] foot along with
14            damage done to both hands along with five-day lose of day room
              program as a counter to my writing up Deputy Cleveland all date 8-
15            19-21. In overt acts to claim allegation that a paperback Bible
              [given to Plaintiff at Sutter Hospital] was to [Cleveland's] opinion
16            Considered to be for that day to be contraband and regardless of his
              violent assault against me, Sgt. Jamil, Sgt. Haynes, and Lt. Baker
17            felt I was found Guilty of Insubordination/Disobedience.

18                 <u>Id.</u> (errors in original).

19   These allegations are largely the same as in Plaintiff's original complaint.  <u>Compare</u> ECF Nos. 1

20   and 12.

21

22                                         **II.  DISCUSSION**

23            Plaintiff's first amended complaint is sufficient to show a cognizable excessive

24   force claim against Defendant Cleveland.  As with the original complaint, Plaintiff's first

25   amended complaint, however, is insufficient to state a cognizable First Amendment claim

26   because Plaintiff is unable to show that his First Amendment right was violated by being denied

27   the movement of a Bible into prison.  Finally, and as with the original complaint, Plaintiff

28   continues to fail to allege sufficient facts to determine whether Defendants Jamil, Haynes, and

1  Baker committed a constitutional violation against him by writing a report.

2          The Court herein recommends dismissal of all claims and defendants <u>except</u>

3  Plaintiff's excessive force claim against Defendant Cleveland.

4          **A.      <u>Religious Practice</u>**

5          The United States Supreme Court has held that prisoners retain their First

6  Amendment rights, including the right to free exercise of religion.  <u>See O'Lone v. Estate of</u>

7  <u>Shabazz</u>, 482 U.S. 342, 348 (1987); <u>see also</u> <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974).  Thus,

8  for example, prisoners have a right to be provided with food sufficient to sustain them in good

9  health and which satisfies the dietary laws of their religion.  <u>See McElyea v. Babbit</u>, 833 F.2d

10  196, 198 (9th Cir. 1987).  In addition, prison officials are required to provide prisoners facilities

11  where they can worship and access to clergy or spiritual leaders.  <u>See Glittlemacker v. Prasse</u>, 428

12  F.2d 1, 4 (3rd Cir. 1970).  Officials are not, however, required to supply clergy at state expense.

13  <u>See id</u>.  Inmates also must be given a "reasonable opportunity" to pursue their faith comparable to

14  that afforded fellow prisoners who adhere to conventional religious precepts.  <u>See Cruz v. Beto</u>,

15  405 U.S. 319, 322 (1972).

16          However, the court has also recognized that limitations on a prisoner's free

17  exercise rights arise from both the fact of incarceration and valid penological objectives.  <u>See</u>

18  <u>McElyea</u>, 833 F.2d at 197.  For instance, under the First Amendment, the penological interest in a

19  simplified food service has been held sufficient to allow a prison to provide orthodox Jewish

20  inmates with a pork-free diet instead of a completely kosher diet.  <u>See Ward v. Walsh</u>, 1 F.3d 873,

21  877-79 (9th Cir. 1993).  Similarly, prison officials have a legitimate penological interest in getting

22  inmates to their work and educational assignments.  <u>See Mayweathers v. Newland</u>, 258 F.3d 930,

23  38 (9th Cir. 2001) (analyzing Muslim inmates' First Amendment challenge to prison work rule).

24          While free exercise of religion claims originally arose under the First Amendment,

25  Congress has enacted various statutes in an effort to provide prisoners with heightened religious

26  protection.  <u>See Warsoldier v. Woodford</u>, 418 F.3d 989, 994 (9th Cir. 2005).  Prior to these

27  congressional efforts, prison free exercise claims were analyzed under the "reasonableness test"

28  set forth in <u>Turner v. Safley</u>, 482 U.S. 78, 89-91 (1987); <u>see e.g.</u> <u>O'Lone</u>, 382 U.S. at 349.  The

1    first effort to provide heightened protection was the Religious Freedom Restoration Act (RFRA)

2    of 1993.  However, the Supreme Court invalidated that act and restored the "reasonableness test."

3    See City of Boerne v. P.F. Flores, 521 U.S. 507 (1997); see also Freeman v. Arpaio, 125 F.3d

4    732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's decision in City of

5    Boerne invalidated RFRA and restored the "reasonableness test" as the applicable standard in free

6    exercise challenges brought by prison inmates).

7            Congress then enacted the Religious Land Use and Institutionalized Persons Act

8    (RLUIPA) in 2000 ". . . in response to the constitutional flaws with RFRA identified in City of

9    Boerne."  Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 985 (9th Cir.

10   2006).  Under RLUIPA, prison officials are prohibited from imposing "substantial burdens" on

11   religious exercise unless there exists a compelling governmental interest and the burden is the

12   least restrictive means of satisfying that interest.  See id. at 986.  RLUIPA has been upheld by the

13   Supreme Court, which held that RLUIPA's "institutionalized-persons provision was compatible

14   with the Court's Establishment Clause jurisprudence and concluded that RLUIPA 'alleviates

15   exceptional government-created burdens on private religious exercise.'"  Warsoldier, 418 F.3d at

16   994 (quoting Cutter v. Wilkinson, 125 S.Ct. 2113, 2117 (2005)).  Congress achieved this goal by

17   replacing the "reasonableness test" articulated in Turner with the "compelling government

18   interest" test codified in RLUIPA at 42 U.S.C. § 2000cc-1(a).  See id.

19           It is not clear whether a prisoner must specifically raise RLUIPA in order to have

20   his claim analyzed under the statute's heightened standard.  In Alvarez v. Hill, the Ninth Circuit

21   held that, if a complaint contains "factual allegations establishing a 'plausible' entitlement to

22   relief under RLUIPA, [plaintiff has] satisfied the minimal notice pleading requirements of Rule 8

23   of the Federal Rules of Civil Procedure."  518 F.3d 1152, 1157 (9th Cir. 2008); but see

24   Henderson v. Terhune, 379 F.3d 709, 715 n.1 (9th Cir. 2004) (declining to express any opinion

25   about whether plaintiff could prevail under RLUIPA because plaintiff brought his claim under the

26   First Amendment only).  Therefore, it is possible for a prisoner's complaint to raise both a First

27   Amendment claim and RLUIPA claim based on the same factual allegations.  In other words,

28   even if the plaintiff does not specifically invoke the heightened protections of RLUIPA, he may

4

1  nonetheless be entitled to them.  Under <u>Henderson</u>, however, the plaintiff's claim may be limited

2  to the less stringent <u>Turner</u> "reasonableness test" if the plaintiff specifically brings the claim

3  under the First Amendment only.

4         Under both the First Amendment and RLUIPA, the prisoner bears the initial

5  burden of establishing that the defendants substantially burdened the practice of his religion by

6  preventing him from engaging in conduct mandated by his faith.  <u>See</u> <u>Freeman v. Arpaio</u>,125 F.3d

7  732, 736 (9th Cir. 1997) (analyzing claim under First Amendment); <u>see also</u> <u>Warsoldier</u>, 418 F.3d

8  at 994-95 (analyzing claim under RLUIPA).  While RLUIPA does not define what constitutes a

9  "substantial burden," pre-RLUIPA cases are instructive.  <u>See</u> <u>id.</u> at 995 (discussing cases defining

10  "substantial burden" in the First Amendment context).  To show a substantial burden on the

11  practice of religion, the prisoner must demonstrate that prison officials' conduct ". . . burdens the

12  adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by

13  the religion or by preventing him or her from engaging in conduct or having a religious

14  experience which the faith mandates."  <u>Graham v. Commissioner</u>, 822 F.2d 844, 850-51 (9th Cir.

15  1987).  The burden must be more than a mere inconvenience.  <u>See</u> <u>id.</u> at 851.  In the context of

16  claims based on religious diets, a plaintiff must prove that prison officials refused to provide a

17  diet which satisfies his religious dietary laws or that the available prison menu prevented him

18  from adhering to the religious dietary laws mandated by his faith.  <u>See</u> <u>Bryant v. Gomez</u>, 46 F.3d

19  948, 949 (9th Cir. 1995).

20         Under the First Amendment "reasonableness test," where the inmate shows a

21  substantial burden the prison regulation or restriction at issue is nonetheless valid if it is

22  reasonably related to a legitimate penological interest.  <u>See</u> <u>Shakur v. Schriro</u>, 514 F.3d 878, 884

23  (9th Cir. 2008) (citing <u>Turner</u>, 482 U.S. at 89).  In applying this test, the court must weight four

24  factors:  (1) whether there is a rational connection between the regulation or restriction and the

25  government interest put forward to justify it; (2) whether there are available alternative means of

26  exercising the right; (3) whether accommodation of the asserted religious right will have a

27  detrimental impact on prison guards, other inmates, or the allocation of limited prison resources;

28  and (4) whether there exist ready alternatives to the regulation or restriction.  <u>See</u> <u>id.</u>; <u>see also</u>

1 | Allen v. Toombs, 827 F.2d 563, 567 (9th Cir. 1987).

2 |         Under RLUIPA, the government is required to ". . . meet the much stricter burden

3 | of showing that the burden it imposes on religious exercise is 'in furtherance of a compelling

4 | government interest; and is the least restrictive means of furthering that compelling governmental

5 | interest.'" Green v. Solano County Jail, 513 F.3d 992, 986, 989 (9th Cir. 2008) (citing 42 U.S.C.

6 | § 2000cc-1(a)(1)-(2) and 2(b)); see also Warsoldier, 418 F.3d at 994-95. Prison security is an

7 | example of a compelling governmental interest. See Green, 513 F.3d at 989 (citing Cutter, 125

8 | S.Ct. at 2113 n.13). In establishing that the regulation or restriction is the least restrictive means

9 | to achieve a compelling governmental interest, prison officials must show that they actually

10 | considered and rejected the efficacy of less restrictive means before adopting the challenged

11 | practice. See Green, 513 F.3d at 989 (citing Warsoldier, 418 F.3d at 999).

12 |         Plaintiff fails to state that Defendant Cleveland deprived his rights by taking away

13 | a Bible Plaintiff received outside of prison. Plaintiff fails to demonstrate that the deprivation of

14 | the Bible burdened his religious practice. In his amended complaint, Plaintiff alleges that

15 | Defendant Cleveland determined the Bible was contraband. See ECF 12, at pg. 1. This was after

16 | Plaintiff was transported out of the hospital. Id. Defendant Cleveland determined the hospital

17 | Bible was contraband but did not restrict Plaintiff from accessing a Bible once he was back in

18 | prison and no longer in the hospital. The penological purpose of restricting outsides items from

19 | going into a prison is legitimate as it is connected to prison safety. Plaintiff fails to show that his

20 | First Amendment right was violated. The Court recommends dismissal of this claim without

21 | further leave to amend.

22 |         **B.**    **Causal Link**

23 |         To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual

24 | connection or link between the actions of the named defendants and the alleged deprivations. See

25 | Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A

26 | person 'subjects' another to the deprivation of a constitutional right, within the meaning of

27 | § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform

28 | an act which he is legally required to do that causes the deprivation of which complaint is made."

1  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations

2  concerning the involvement of official personnel in civil rights violations are not sufficient.  See

3  Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, the plaintiff must set forth

4  specific facts as to each individual defendant's causal role in the alleged constitutional

5  deprivation.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

6          Here, Plaintiff again fails to provide any facts to show what Defendants Jamil,

7  Haynes, and Baker did that violated Plaintiffs constitutional right. Plaintiff tries to raise a claim

8  against Defendants Jamil, Haynes, and Baker for reporting him up for disobedience and

9  insubordination.  Plaintiff does not allege facts to show Defendants Jamil, Haynes, and Baker

10  wrote their report in response to the excessive force used by Defendant Cleveland against

11  Plaintiff. Based on the facts provided, Plaintiff has not shown that a constitutional violation was

12  committed by Defendants Jamil, Haynes, and Baker.

13  / / /

14  / / /

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

### III. CONCLUSION

Because it is possible that the deficiencies identified herein can be cured by amending the complaint, Plaintiff will be entitled leave to amend the complaint and cure the deficiencies identified here.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).

Based on the foregoing, the undersigned recommends as follows:

1.       Plaintiff's freedom of religion claims be dismissed

2.       Defendants Jamil, Haynes, and Baker be dismissed.

3.       Plaintiff shall have 45 days from the date of this Order to file a second amended complaint, addressing the deficiencies cited by the Court in this Order. Should Plaintiff fail to timely amend, the defective claims will be dismissed without further leave to amend and this action proceed on Plaintiff's first amended complaint, ECF No. 12, as against Defendant Cleveland only on Plaintiff's Eighth Amendment excessive force claim. Plaintiff is reminded that any amended pleading must be complete as pled, without reference to attempted incorporation of any prior pleading.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


Dated:  July 24, 2023

_____

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

8